OPINION
Douglas Andrew was found guilty after a trial to a magistrate of violating Fairborn Ordinance § 331.33, which requires a motorist who is turning left within an intersection to yield the right-of-way to traffic approaching from the opposite direction. The trial court overruled Andrew's objections to the magistrate's decision, affirmed and adopted the magistrate's decision as its own, and imposed a fine and costs. Andrew advances three assignments of error on appeal.
 1. DEFENDANT-APPELLANT WAS DENIED DUE PROCESS OF LAW WHEN THE TRIAL COURT DENIED THE EXISTENCE OF HIS TESTIMONY THAT THE LIGHT TURNED RED BEFORE MS. THOMPSON ENTERED THE INTERSECTION.
The essential facts are that Andrew was eastbound on Dayton- Yellow Springs Road where it intersects with northbound I-675, intending to turn left and enter northbound I-675. Doris Thompson was westbound on Dayton-Yellow Springs Road and collided with the right side of Andrew's car as Andrew turned left into Thompson's path.
This assignment is premised on a brief passage from the trial court's decision and judgment entry. We have reproduced the complete paragraph in which the passage is found and have highlighted the passage in question.
 In the case at bar, Ms. Thompson testified that she entered the intersection on a yellow light (Tr. pp. 28, 33). The Magistrate made a specific finding (Tr. p. 71) that Ms. Thompson entered the intersection on a yellow light. This finding was reasonable from the evidence presented. It should be noted that in Defendant's testimony, while he danced around the issue, he never said that the light had turned red before Ms. Thompson entered the intersection. By entering the intersection on the yellow, Ms. Thompson possessed a right of way. There was sufficient evidence from the testimony of the witnesses that Ms. Thompson's vehicle was within the intersection or so close to the intersection as to constitute an immediate hazard under § 331.33.
(Emphasis ours).
Andrew refers us to his testimony on direct examination to support this assignment of error. His complete testimony as is pertinent to this assignment is as follows:
 I was approaching the intersection here. I moved into the turn lane here. The light was green. I moved into the intersection with the intention of turning left to get on I-675 north. At that time, there was other oncoming traffic coming the other direction. I judged that I didn't have enough of a gap to make this turn at that time, so I sat in the intersection. I was ahead of the stop bar. I sat in the intersection waiting for the traffic to clear. While I was in the intersection, I could see my stoplight and I saw it turn from green to yellow while I was sitting, waiting in the intersection. After it turned yellow, I looked down again at the oncoming traffic. There were at least two other vehicles that were coming from the east to the west through the intersection that actually entered the intersection after the light had turned yellow. And I remember thinking, I'll have to let those guys pass through. I estimate they probably took about 4 or 5 seconds to clear the intersection.
 I know from my traveling this way every day that that's a very short yellow light. It's about 2 seconds. At any rate, I then looked back at the other oncoming traffic after those vehicles had cleared the intersection. The closest vehicle of the oncoming cars was several car lengths from the stop bar. I remember thinking that — I also remember thinking that they were stopping. And I remember thinking that I have enough room to make the turn even if those cars don't stop.
 Since I was blocking the intersection, there were cars waiting coming off of I-675 northbound, there were a number of cars waiting to come through the intersection from the south, so, in order to clear the intersection, I then turned left. I suddenly realized that there was a car about to strike me. I remember thinking, My God, where did he come from? He must have actually sped up, because the closest car had originally been some distance behind the stop bar. I was struck very hard.
Andrew's own testimony undercuts this assignment of error. The trial court correctly noted that Andrew never testified that the light facing Thompson turned red before she entered the intersection.
While Andrew's testimony supported an inference that the light turned red before Thompson entered the intersection, the trial court certainly did not "deny the existence" of Andrew's testimony by not drawing the hoped for inference.
Andrew also refers to the testimony of Fairborn Police Officer Kevin Young in support of this assignment. Officer Young investigated the accident and testified to the following discussion with Andrew:
. . . is it your understanding, based upon your conversation with Mr. Andrew, that he entered the intersection — I'm talking about pointing straight ahead with the turn signal on.
 — at the green light and then waited for oncoming traffic to clear so that he could safely turn? Is that your understanding of what —
 A. That was, from what I understood Mr. Andrew tell me, yes.
 Q. You do not have any personal knowledge that would cause you to dispute that portion as fact, correct?
 A. No. Nobody else had said anything else to disregard that.
 Q. Did Mr. Andrew tell you that while he was then waiting to safely make his left turn, while he was in the intersection and waiting, that the light turned red?
 A. To the best of my recollection, he did say that he turned when the light was red, I guess. I'm not real sure exactly what color he said the light was.
 Q. Would it be fair to say that you don't have any personal knowledge to dispute his claim that, after the light turned red, he then attempted to clear the intersection by making a safe left turn?
A. Repeat the first part of that, if you would.
 Q. I'll try. Based upon your personal knowledge, would it be fair to say that you do not have any personal knowledge to dispute his claim that he waited in the intersection at a red light, after the light had turned red, waiting for traffic to clear, so that he could safely make his left-hand turn and clear the intersection?
A. I have no reason to dispute what he said.
 Q. And you have no physical evidence to disprove either of those two claims either, correct?
A. No, we have no other witnesses to that effect.
Q. And no physical evidence to dispute his claims?
A. No.
While it is true that Andrew may have told Officer Young that the light facing Thompson was red when he turned left, and Officer Young had no basis for questioning the accuracy of Andrew's statement, it does not follow that the trial court denied the existence of Officer Young's testimony. Rather, it appears that the trial court chose not to credit this unsworn statement of an interested party, which was within its discretion to do.
The first assignment is overruled.
 2. THE TRIAL COURT DENIED DEFENDANT-APPELLANT DUE PROCESS OF LAW WHEN IT EXCLUDED HIS EVIDENCE [THAT MS. THOMPSON WAS SPEEDING AND SHE CAUSED THE ACCIDENT] AS "IRRELEVANT."
This assignment is based on the following passage from the trial court's decision and judgment entry:
 There was evidence from Defendant's expert witness that Ms. Thompson was traveling westbound at 44 to 50 mph at the time of impact. The speed limit on the east side of the intersection was 45 mph. Whether or not Ms. Thompson was speeding or who caused the accident is irrelevant to the case at bar. It may have a bearing on comparative negligence, but that cause of action is for another day, another complaint, another standard of proof and perhaps another forum.
This assignment has merit.
Andrew's duty under Fairborn Ordinance § 331.33 was to yield the "right-of-way" to Thompson. "Right-of-way," as is germane to this case, is defined as follows:
 The right of a vehicle, streetcar, trackless trolley, or pedestrian to proceed uninterruptedly in a lawful manner in the direction in which it or the individual is moving in preference to another vehicle, streetcar, trackless trolley, or pedestrian approaching from a different direction into its or the individual's path.
R.C. 4511.01(UU); (Emphasis ours).
Because Thompson only possessed the right-of-way over Andrew if she was proceeding in a lawful manner, it was not irrelevant that she might have been speeding. If she was speeding, she forfeited the right-of-way.
We will not question the trial court's finding that Thompson entered the intersection on a yellow light, but that determination alone does not end the analysis. The trial court was required to also determine whether Thompson was operating in a lawful manner — and thus retained the right-of-way over Andrew — or whether she was not — thus forfeiting the right-of-way.
Neither the magistrate nor the trial court did this further analysis.
The offense of speeding is defined at R.C. 4511.21 in part as follows:
 (A) No person shall operate a motor vehicle, trackless trolley, or streetcar at a speed greater or less than is reasonable or proper, having due regard to the traffic, surface, and width of the street or highway and any other conditions.
It is prima facie unlawful to exceed the posted speed limit. R.C. 4511.21(B).
Neither the magistrate nor the trial court addressed Thompson's actual speed or whether it was lawful. Thompson testified that she was driving within the speed limit, and slowing, as she approached the intersection. There was, however, expert testimony from Andrew's expert that Thompson's speed at impact was 50 mph. The collision occurred just before 8:00 a.m. on Thursday, November 5, 1998, when Andrew and Thompson (and presumably others) were en route to work. Thus, we cannot say that the magistrate and trial court would have necessarily determined that Thompson was proceeding in a lawful manner when she collided with Andrew.
Accordingly, we will remand this matter for the trial court to determine whether Thompson was proceeding in a lawful manner at the time of the collision.
The second assignment is sustained.
 3. APPELLANT'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
Given our disposition of the second assignment, the third assignment is not ripe for disposition at this time and is overruled accordingly.
The judgment will be reversed, and the matter will be remanded for further proceedings consistent with this opinion.
FAIN, J. and YOUNG, J., concur.
Copies mailed to:
Michael A. Mayer, Diane Kappeler DePascale, Hon. Catherine M. Barber.